Please call the next case. 113-1453, Antonio Valdez v. Peet's Fresh Market. May I proceed? It please the Court, John Makarowski on behalf of Appellant Peet's Fresh Market. What we have here is a unanimous decision by the Industrial Commission from two of the most liberal commissioners in the history of the Commission, Dauphine and Mason. Now, should we take judicial notice of that? You may. They have failed to prove an accidental injury on June 13, 2009 or August 9, 2009. Now, on administrative review, as Justice Hoffman has pointed out today Elegantly opined. Pardon me? Elegantly opined? Elegantly opined. The Court is not to substitute its judgment, but is to determine whether the Commission decision is against the manifest weight of the evidence. If there is any evidence that supports the Commission decision or any reasonable inference that could be drawn from the Commission, the circuit court is not to substitute its judgment. And here there's some conflicting opinion. You'd have to concede there was some evidence of an accident. There's also other evidence, including contemporary medical records, that refute the accident. And you're saying that's not against the manifest weight, right? Yes, Your Honor. And also, it is the Commission's right to judge the credibility and weigh the medical evidence. I submit that the circuit court, in reversing unanimous decision of the Commission, violated the standard on review. Now, initially I would point out that there's a lot of talk about some incident of February 2008. And as the Commission decision states, there's no application pending for February of 2008. If Klamath felt he had some injury in February of 2008, he should have filed an application. We don't know who the carrier was for any, we know nothing about any accident. Klamath himself brought up that February? He did. 2008, okay. He did, Your Honor. I'm sorry, I interjected into the case. Okay. Right. He interjected it. He admitted that he continued to work after this February of 2008 occurrence until eight days later when he was terminated for some use of his cell phone. Admittedly, he had no medical. But Klamath's testimony at arbitration was that since February of 2008, he had back pain. He had pain going down his leg. His partner, Ms. Pineda, testified specifically he had severe pain for about a month. And the question was preceding June 13th of 2009, the first filed application in this case. Yes, the medication he was taking was not doing anything. So admittedly, he was on medication on June 13th. She also indicated that he had back and right buttock pain for the past month. Now, employee went all the way from February of 2008 until June 13th of 2009 when he applied for reemployment and was hired. This is his first date back at work. Now, in looking at the contemporaneous medical records in which the commission, in my opinion, was free to rely upon, the history taken on June 14th, complaint of pain radiating right buttock down right leg denies any injury. According to the records, he specifically denied an injury and told the hospital staff the pain had been present for a month, right? Yes, Your Honor. That is correct. And then he specifically also said through his interpreter, which Ms. Pineda testified she gave the history, back and right. Pinto or Pineda? Pinto. I'm sorry, Your Honor. You are correct. Back and right buttock pain for the past month denies any injury. He then goes and treats at East Chicago and he has care there and gives the history. Slipped and fell, pain since February of 2008. No mention of June 13th of 2009. The employer denies any knowledge of a June 13th, 2009 incident. He stopped working, didn't bring any notes, was terminated for no call, no show for three days. He then is rehired at a different store location because Ms. Pinto suggests that he apply there. He starts work on August 7th. Works August 7th, works August 8th, works August 9th. Before we get into that, with regard to the June 13th alleged injury, accident at work, who's Dr. Hood? Hood was a doctor that he elected to treat. They suggested he go see a Dr. Spock. Dr. Spock? Yes. He testified he didn't have money to see Dr. Spock because he wanted $500. So he went to the East Chicago, Indiana clinic. Does Hood's records reference the complainant saying anything about a work-related injury in June? No. There's no reference whatsoever. This is his treating physician? That's his treating physician, Your Honor. So we then go to August 7th. He works August 7th, works August 8th. Now he claims that he was under a 10-pound restriction. Nick, the general manager, indicates he wasn't aware of any restriction. He alleges on August 9th that he was lifting cases of chicken and had back pain. Nick's testimony was he came to me and said, I have back pain. Nick asked him what it was from. He said it was from an old injury. He did not make an allegation to Nick that he had hurt himself lifting chickens. And that is consistent with the histories again when he goes back to the ER on August 9th. His history is, life translates, he slipped while at work, and this would reference the February 08 occurrence because there's no slip alleged as part of the June 13th or August 9th claim, has been having back pain since then. Then further histories for the same date. Back pain, injured back one year ago, complained of low back pain, ran out of medication. Goes back to the ER the next day, August 10th. Gives an additional history. Chronic back condition, old injury in April, is under personal care, states was here yesterday because his medications ran out. History, family members state that he did not have any injury. So all the records are consistent. And again, a denial of any recent injury, alleged chronic injury, going back to some condition in years prior. And as the commission notes, no reference to a June 13th, no reference to an August 9th. And admittedly, by his own testimony, he'd been having back pain since February of 08, and on medication, which Ms. Pinto testified he was taking right up to June 13th, and pain down his leg. Counsel? May I interrupt you? Because you're in a point of the record that I believe the trial court identified as well. There was a listing of seven different what the trial court termed discrepancies that the commission had picked up on. And I'm just reading from the trial court's order. It says the court finds that most of these discrepancies are manufactured inconsistencies by the commission that are not supported by the record. I'm kind of curious about this characterization of manufactured inconsistencies. But what you've just indicated, when you were talking about the lack of history, that was one of the inconsistencies noted by the trial court. Were these supported by the record, these inconsistencies noted by the commission? These inconsistencies are well documented in the lengthy decision of the commission. And in the record, there is no contemporaneous medical record surrounding the June 13th, 2009, or August 9th, 2009 incident. All the records deny any injury and relate the condition going back to February or April. And it's stated on multiple different histories given during that course of care. Now, there was also one other discrepancy that the commission felt went to claimant's credibility. He testified after the June 13th, 2009 incident, Ms. Pinto came to the location and drove him home, while petitioner's testimony was that he drove himself home. Admittedly, that's an inconsistency. How significant? Not as significant as to the inconsistencies in the medical records, because as the commission noted, there was no supporting medical record. Now, I would point out also that he denied any prior back problem, but the CAT scan, and the commission notes this, compares it to prior studies taken in March of 07. I would also point out to you that all his complaints have always been on the right side, dating back to February of 08. And if you look at the CAT scan studies, all the findings are on the left side. And if you look at the clinical findings, and the commission is well aware of Dr. Gerber here in medical clinic and Dr. Michael. They see these physicians all the time. And if you look at the release, his own doctor released him back to work August 11th, 2009, without restrictions. And the discogram study that was subsequently performed, Dr. Michael, in his report of November 5th, 2009, specifically stated, in summary, none of the discs meet the criteria for pathology or tension in pain provocation grounds. The two most discs, L4, L5, L5, S1, failed to elicit pain on provocation. So there's not even any medical support. But the whole issue here is that the record supports what the commission did. The commission was free to reach the conclusions they did. There's ample evidence supported in the record. And Nick's testimony, the general manager, is consistent with what Petitioner told the hospital. Nick said on August 9th he asked him what the pain was, and he said it was from an old injury. The commission was free to rely upon that testimony in conjunction with the medical records in finding that Petitioner failed to prove accidental injury as alleged either on June 13th or August 9th. I would respectfully request that this court reinstate the decision of the commission. Thank you. Thank you, counsel. Counsel, you may respond. Your Honors, counsel, my name is Michael Casey. What the commission did here was base this decision on a wrong standard of law. The commission stated very explicitly what Petitioner described was different pain, not new pain. And it's longstanding law of this State that different pain, that an exacerbation of a preexisting condition, can give rise to a worker's compensation claim. That's what the circuit court said, and that reflects what the law of the State of Illinois is. Counsel, to take the position that counsel argues is that we have to say that this man from February of 2008 up until he was rehired, hired by a respondent, in January of 2009 had a condition of extreme pain that required, as it did require after the incident of January of 2000, strike that, June of 2012. After that incident in June 13, 2012, from 2008 up until that incident, he had such terrible pain that he would, he had the same condition that required heavy medication, that required barbiturate medication, required restrictions, which required ultimately, which was diagnosed to require a surgery. That just is not the evidence in this record. The evidence in this record is, one, he did have something in March of 2007. There's a reference to a CT scan about a problem in 2007. There's nothing more than that. There's a reference to it. He's hired by a respondent, and he works for a respondent at least through February of 2008, without any problems that brought him to a hospital. In February of 2008, that's when he was cleaning the room and he slipped and fell and hurt his back. Prior to that, he's working for a respondent. There's no indication in this record that he's got any problem with his back. He slipped and fell in February of 2008. Did he reference anything? Did he tell the employer? Did he file a claim? Did he do anything? He did not file a claim, and he did not seek any medical treatment. The question says, well, why didn't, the question you asked me, why didn't he file a claim for February of 2008? He didn't seek any medical treatment. He continued to work after that incident. He hurt his back. He continued to work. He was terminated for a reason different, totally unrelated to this. He was because of the cell phone incident. There's no indication he had any medical treatment throughout the course after February of 2008. He did have pain. He did take medication for it. But he says this, right? But, I mean, where is the evidence that the commission could rely on to establish that he had his injury in February 2008? They had to rely on his credibility and his believability, right? What I think the commission did here is what, when I listen to counsel describe these histories, if you run them on altogether, it's very difficult to distinguish what happened when. If you say the phrases of had incident in February 2008, had back pain, had leg pain, took medications, da-da-da-da-da, and you just run it all together, you say, well, does all this refer back to February of 2008? We've got a guy who doesn't speak English who's talking to his wife who doesn't speak English well and giving it to somebody who's taking a history. If you run all that stuff together, maybe you can make an inference from all of that stuff that this guy has had a longstanding problem from February of 2008 up to today's date, up to the January of 2012 situation. Nothing is different. But if you rely only on that record, there's nothing in this case to show that he had any medical treatment throughout that. Can I ask you a point of question? What you seem to be testily saying is there's some confusion here, and you can see where the confusion would stem from. But I have to come back to a very blunt question. Whose burden is it to clarify this confusion? Who has the burden of proof here? I do. Right. So you can see that there's a problem with the argument that somehow the circuit court's decision, overturning the commission, should be upheld in light of all this confusion. The circuit court opinion addressed the issue of the fact that the commission stated the wrong standard of law. The commission acknowledged what he had now is different pain than what he had in 2008. Here's the answer to that that I think that we're glossing over. You have an argument to be made. The commission denied compensation on the basis of the claimant failed to establish a work-related accident arising out of and in the course of the employment in either June or August. Therefore, we don't get to the aggravation of the preexisting condition. They didn't believe there was a work-related injury in either of those dates, and the contemporary medical records in his own statements support that conclusion. That's what he's hanging his head on. And if the commission's position is that there's nothing to indicate that anything happened on February 14th and a degree injury in August, I don't read them to be saying that. What they simply seem to be saying is that Mr. Casey, let me read what they did say. Based on the testimony of the petitioner and his partner, as well as the medical records, we conclude that the plaintiff failed to prove he sustained an accident on June the 13th, which arose out of and in the course of his employment. They went on to say the commission also finds the petitioner did not sustain a work-related accident on August the 9th, 2009. This commission found nothing happened on those two days. They didn't believe him, and he has no evidence to the contrary other than his own testimony. That's the problem. And that's inconsistent. Forget about aggravation of a preexisting injury. They said nothing happened on those days. That's inconsistent with the evidence, and totally inconsistent with the weight of evidence in this record. Why? Because with regard, specifically with regard to the second accident, he told his manager, I've got back pain. And you recall the manager said in his testimony, he came up to me and said, I've got back pain, but it's from before I started to work here. There's an incident. Wait a minute. Hold on. Where? Where? Where's the incident? He's got back pain. It was as a result of something that happened months before he started working. Where's the incident in August? What happened to him? What did he do to aggravate this preexisting injury other than what he said he did because they didn't believe him? The incident is his testimony corroborated by the medical records. Well, the medical records really says he has pain. I beg your pardon? Medical records only say he has pain. The medical records give, was lifting heavy objects at work as part of the indication, now the pain is running down his leg. But these are all histories that he gave. Everything that you're relying on is his testimony. They don't believe him. And they're the ones that decide credibility, not us, and certainly not the trial judge. And their basis of questioning his credibility, as the court pointed out, they challenged his credibility on inconsequential statements in the record. I don't know that we characterize it as inconsequential. He called his wife. The testimony was he called his wife to come and pick him up because he was in such bad pain. And the wife said, no, I told him I couldn't make it, so he had to drive home. So now he's incredible. He's got in his mind calling his wife. Mr. Casey, that's not all that's in this record. And if Justice McCullough was here, do you know what he'd say? He'd say you couldn't even convince Commissioner Mason. Of the seven. That's a problem. I think of the basis that the commission's address stated in this decision, the circuit court addressed each one of them, addressed them in a very reasonable fashion as to why they were inconsequential. I have to ask you about that. According to what my learning colleague, Justice Harris, read earlier, the circuit court decided there were some manufactured inconsistencies by the commission. If the medical records that are introduced don't say anything at all about a specific accident and injury on these dates, how could something be manufactured? There's nothing there to manufacture. Where's the manufacturing? Where's the changing or the modifying of the record of the evidence? The medical records introduced by somebody who compiled that, people who are not a party to the case, say he didn't say anything about an accident. How did that get manufactured? You're correct, Your Honor, in saying they didn't give a specific date. But they did give reference, was lifting heavy objects at work, pain is now radiating down his leg. Those are not objective findings. I beg your pardon? Those aren't objective findings. That's just writing down what somebody told you. They have the credibility that we longstanding give to somebody giving information to their doctor. Apparently they didn't believe him there or they didn't believe him then. It's a hearing. I mean, we have the commission's decision. Yeah. As I said, the commission's issues of credibility seemed to me that they, as the circuit court stated, were on irrelevant issues. So the standard that the commission used here to say that we don't find that there was an accident and that all he described was new pain, not worse pain. If the new pain is arises, or if the worsening of the pain arises from doing something at work, lifting, in the mind of this petitioner, that doesn't, that's not an accident. But if lifting makes it worse, the law is, that's an accident. That gives rise to a workers' comp claim. That's the law. Does the evidence in this case show that there was lifting that gave rise to a worsening of conditions? Yes. That evidence is in the doctor's report. That evidence is in the records. As I said, every time he went into a doctor, he said, lifting at work and now having pain down the back of my leg. Thank you. Counsel, reply? Yes, I'll be very brief. There's no evidence in the record that Ms. Pinto could not communicate adequately in English. And there is evidence that the right leg complaints and all the other complaints predated June 13th of 09 and August 9th of 09. And the commission not only found that there was no new condition, but they specifically found that he did not sustain an accident on either date of June 13th of 09 or August 9th of 09. Thank you. Thank you, counsel. This matter will be taken under advisement. This position shall issue. We'll stand in brief recess.